O’Neall, J.,
dissenting. This case was tried by myself, and although, had I been on the jury, I should have found for the defendants, yet there were certainly facts in the evidence, which might have led another to a different conclusion ; and, therefore, I am not disposed to disturb the verdict. This makes it necessary to consider the legal doctrine which I laid down to the jury.
In substance, I held, that if the injury to the plaintiff resulted* from the negligence of the engineer, then the plaintiff was entitled to recover. This doctrine, a large majority of my brethren think erroneous, and however much deference is due to their opinions, yet, as I consider them to be wrong, I think it my duty to state my own views.
This case is one of the first arising out of the conveyance of human beings by locomotives on railroads. It goes beyond the ordinary case of a passenger, and presents a claim on the part of a hired servant, against his employers, for an injury sustained in their service. If it arose out of any of the old-fashioned modes of conveyance, managed by the defendants themselves, could there be a doubt that they would be liable, if the injury resulted from negligence ? Take the case of a stage coach, driven by the owner, and let it be supposed that the plaintiff was hired as a guard, and that he was injured in that employment, by the careless driving of the *263 defendant, who would hesitate to say that he was entitled to recover ? No one who had a proper regard to legal principles.
Is there any distinction in law as to the effect which the employment of the plaintiff is to have, in the different kinds of service in which he may engage ? I think there is none. If Mr. Tupper, the able and efficient officer of the company, had, in person, managed the engine, and the plaintiff had been injured by his carelessness, I would most respectfully ask, how could it be pretended that the company was not liable ?
I admit here, once and for all, that the plaintiff, like any other servant, took, as consequence of his contract, the usual and ordinary risks of his employment. What is meant by this ? No more than that he could not claim for an injury, against which the ordinary prudence of his employers, their agents or himself, could provide. Whenever negligence is made out as the cause of injury, it does not result from the ordinary risks of employment.
How far are the defendants liable for the acts of the engineer ? In the language used in Bacon’s Abridgment, Tit. Master and Servant, letter R , “it is highly reasonable that they should answer for such substitute, at least civililer; and that his acts, being pursuant to the authority given him, should be deemed the acts of the master.” Now, to this authority, it will not do to say the defendants did not authorize the engineer *to run his engine so carelessly as to injure the plaintiff. They put him in command of it, and authorized him with it to run the road. If, in the doing of this act, which is according to their authority, he acts negligently, then they are liable for the consequences, for they result from the doing of their business, by one then employed by them. The cases of Drayton ads. Moore, and Parker & Co. vs. Gordon, (Dudley’s Rep. 268,) and of O'Connell vs. Strong, (Ib. 265,) are full to this point. In ordinary cases, this would not be questioned. But it is supposed that this case is not governed by the ordinary rules applicable to cases of liability, arising out of the relation of master and servant. I am at a loss to conceive any just reason for this motion. The law, it seems to me, is to be regarded as a general science, applicable to every case coming within the letter or the reason of the rule. Where it is within neither, it becomes an exception to it. It is only necessary to state this case, to see that it is within both the letter and reason of the rule; for the defendants employ the plaintiff to act under the command of another of their servants. In such a case, the servant in command, is in the place of the employers. When they hire another to engage in a service, where neither his own care nor prudence can shield him from injury, which may arise from the act of another of their agents, having the control of him, the question of their liability depends upon the care used by such superior agent. The ordinary rule in cases of hiring goods, is, that the hirer should use that degree of care which a prudent man would take of his own goods. If this degree of care is shown, then the hirer is not liable for any injury which may result to the goods hired. This rule, it seems to me, must, necessarily, be that which applies to this case. Is more favor to be bestowed on a man’s goods than on his person ? It would be strange that this should be so. It may be tested, however, by inquiring if the plaintiff, instead of himself, had hired his negro man to the defendants as second fireman, and he had lost his leg by the care- *264 lessncss of the engineer, would not the defendants have been liable ? It seems to me that they would, or one section of the law of bailments would be repealed by the Court of Errors. There can be no difference in the law, as applicable to the white mail or the slave, in a contract of hiring. Both are capable of self-preservation, and both are ^capable of wrong and right action ; and in the capacity of firemen, both are under the orders of the engineer, and must look to him for safety.
In the cases of Drayton ads. Moore, and Parker & Co. vs. Gordon, (Dud. Rep. 272,) it was said, “ when a master employs slaves in any public employment or trust, such as tradesmen, ferrymen, wagoners, patroons of boats, or masters of vessels in the coasting or river navigation, he undertakes, not only for their skill, and faithfulness to all who may employ them, but also, for their general skill and faithfulness to the 'whole community.” This rule stated as to slaves, applies more forcibly to hired servants, and my brother Johnson, who then resisted the rule as to slaves, admitted it in its fullest extent as to hired servants. Taking this as settled law, how stood the plaintiff in his contract with the defendants in relation to the engineer ? Had he not the right, according to law% to regard the defendants as contracting both for skilfulness and faithfulness? It seems to me, there can be no doubt about it. Well, this being so, if the engineer was negligent, the defendants’ undertaking for his faithfulness was broken, and they are most clearly liable.
It is, however, urged (and that is, as I understand, the ground on which the Court of Errors decides the case) that this case is one of novel impression, and not to be decided by the ordinary rules of the law of bailment. Conveyance by locomotives on railways is supposed to be more analogous to shipping than any thing else; and hence, unless a sailor could recover for an injury arising from the neglect of a master, it is supposed that a fireman cannot, for an injury arising from the neglect of the engineer. Before I discuss the case in this new aspect, I deny that any mode of conveyance on land is to be put on a footing with the navigation of the ocean in ships. That is governed by the principles of law coeval with society, and in many respects common to every civilized nation of the earth. Conveyances on land are also regulated by a very ancient and well-settled law wholly distinct from the other. It will, however, be sufficient to show by one plain view, that the law applicable to mariners cannot affect this case. Unless a vessel earns freight, the mariner is entitled to no wages. Suppose a locomotive running from Charleston to Aiken should burn up the entire train, and thus earn no *would not all the hands hired by the defendants to manage her, be entitled to their wages ? There could be no more doubt that they would, than that a man hired to drive my wagon to Charleston, who, by some unforeseen accident should lose his load, would still be entitled to his wages. This shows that in the very beginning there is such a difference in the law of a ship and that of a locomotive, that it is impossible the law of the former can decide the right of a servant employed in the latter, to recover for an injury arising from the neglect of the engineer.
But if it were otherwise, and this case depended upon maritime law, still I am inclined to think the plaintiff ought to recover. Ho exactly analogous case can be found. In Phillips on Ins. 463, Judge Story is *265 represented as 'saying, in the case of the Saratoga, “It appears to me, that upon the established doctrine of our law, where the freight is lost by inevitable accident, the seamen cannot recover wages, as such, from the ship owner.” I concede that this dictum is the true law regulating a mariner’s right to wages. If the freight was lost by the master’s neglect, it could not then be ascribed to inevitable accident; and then, I think, the seaman would be entitled to recover If this is true in relation to wages, the same rule must hold as to the mariner’s right to recover for any injury arising from the negligence of the master.
But, it is said, it would be impolitic to make the defendants liable for any injury accruing to a fireman, from the neglect of the engineer. This would be worth inquiring into with great care in the Legislature; but, in a Court, I think we have nothing to do with the policy of a case; the law of it is our guide. But if we are to look to the policy, then I should avgue that the more liability imposed on the railroad company, the more care and prudence would be thereby elicited. This result is what the community desires. For it secures life and property, committed to their care.
I think the motion ought to be dismissed.
Gantt, J., concurred.